**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAY 17 2022 ★

BROOKLYN OFFICE Filed 5/17/2022

DMP/AAS:JAM
F.#2019R00989

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

SHUJUN WANG,
FENG HE,
    also known as "Boss He,"
JIE JI,
MING LI,
    also known as "Elder Tang" and
    "Little Li," and
KEQING LU,
    also known as "Boss Lu,"

               Defendants.

- - - - - - - - - - - - - X

<u>I N D I C T M E N T</u>

Cr. No. <u>1:22-cr-00230(SJ)(JRC)</u>
(T. 18, U.S.C., §§ 371, 951(a), 982(a)(2)(B),
982(b)(1), 1001(a)(2), 1028(a)(7),
1028(b)(2)(B), 1028(b)(5), 1028(c)(3)(A), 2
and 3551 <u>et seq.</u>; T. 21, U.S.C., § 853(p))

THE GRAND JURY CHARGES:

INTRODUCTION

       At all times relevant to this Indictment, unless otherwise stated:

I.    <u>Overview of Chinese Intelligence Services' Structure and Activities</u>

       1.    The People's Republic of China ("PRC") conducted intelligence activities using a variety of sources, including through the Ministry of State Security ("MSS"). The MSS handled civilian intelligence collection for the PRC and was responsible for counterintelligence and foreign intelligence, as well as political security. The MSS consisted of a central ministry, provincial state security departments and municipal state security bureaus.

2.     Among other things, the MSS and its regional bureaus focused on identifying and influencing the foreign policy of other countries, including the United States. The MSS and its bureaus sought to obtain information on political, economic and security policies that might affect the PRC, along with military, scientific and technical information of value to the PRC.

3.     One of the ways the MSS collected information was through clandestine and overt human source operations, of which the United States was a principal target.   To achieve their goals abroad, the MSS sought to recruit, among others, current and former PRC nationals living outside the PRC, including in the United States, to serve as assets.   Assets were people who agreed to help a foreign intelligence service by providing information to that service in response to directions by foreign intelligence officers or agents. The officers or agents who provided directions or "taskings" to assets were known as an asset's "handler."   The MSS used assets to gather information that the government of the PRC could utilize for economic, political and military decision making and advantage.

4.     As relevant to this Indictment, the MSS used assets to collect information about, among other things, individuals and groups viewed as potentially adverse to the interests of the PRC, including ethnic Uyghur supporters of the East Turkestan independence movement; Tibetan supporters of the Tibetan independence movement; adherents of the Falun Gong; members of the Chinese democracy movement; and advocates for the Taiwan independence movement, which PRC officials referred to as "the five poisons" threatening the stability of the PRC and Communist Party rule.

II.   The Defendants

5.   The defendant SHUJUN WANG was a 73-year-old naturalized American citizen of Chinese descent who resided in both Flushing, Queens and Norwich, Connecticut.   While living in the PRC prior to 1994, WANG was a Professor at Qingdao College of Social Sciences.   In or about 1994, WANG came to the United States as a visiting scholar for a two-year term at a university in New York City and, in 1996, he was granted an EB-1 permanent worker visa for outstanding professors.   He was later granted lawful permanent resident status and became a naturalized American citizen in 2003.

6.   In or about 2006, WANG was a founder of an organization located in Flushing, Queens dedicated to honoring Hu Yaobang and Zhao Ziyang, former leaders of the Chinese Communist Party ("CCP") who promoted political and economic reforms within the PRC and were eventually forced from power (the "Memorial Foundation").   Many of the Memorial Foundation's directors were well-known pro-democracy dissidents who opposed the current PRC government.   WANG recently served as the Secretary General of the Memorial Foundation and participated in the PRC dissident and pro-democracy communities in the Eastern District of New York and elsewhere.

4

7.      The defendant FENG HE, also known as "Boss He," was a PRC citizen and a Director with the Guangdong State Security Bureau ("GSSB"), a branch office of the MSS located in Guangdong, PRC.   A photograph of HE is set forth below:



8.      The defendant JIE JI was a PRC citizen and a Section Chief with the Qingdao State Security Bureau ("QSSB"), a branch office of the MSS located in Qingdao, PRC.   A photograph of JI is set forth below:



9. The defendant MING LI, also known as "Elder Tang" and "Little Li," was a PRC citizen and affiliated with the GSSB.   A photograph of LI is set forth below:



10. The defendant KEQING LU, also known as "Boss Lu," was a PRC citizen and a Division Chief with the QSSB.   A photograph of LU is set forth below:



III.    The Criminal Scheme

    A.    Overview

       11.    Since at least in or about 2005 until March 16, 2022, the defendant SHUJUN WANG acted as an agent of the PRC government, operating under the direction and control of the MSS, including the defendants FENG HE, also known as "Boss He," JIE JI, MING LI, also known as "Elder Tang" and "Little Li," and KEQING LU, also known as "Boss Lu." HE, JI, LI and LU acted as WANG's handlers.

       12.    The defendant SHUJUN WANG used his position with the Memorial Foundation and within the Chinese diaspora community in the New York metropolitan area to collect information about Chinese dissidents, human rights leaders and democracy advocates in the United States and elsewhere and to pass that information to the PRC government through HE, JI, LI and LU.

       13.    The defendant SHUJUN WANG communicated with and provided information to the co-defendants in several ways.    First, WANG conducted face-to-face meetings with MSS officials while on trips to the PRC.    Second, WANG used a messaging application to receive taskings from the co-defendants and to send and receive written messages and files.    Third, WANG memorialized the information he collected in email "diaries" to be accessed by the co-defendants who were directing WANG's activities. These "diaries" included details about WANG's private conversations with prominent dissidents as well as the activities of pro-democracy activists and human rights organizations.

14.     In conducting these activities, the defendant SHUJUN WANG did not notify the Attorney General that he was acting as an agent of a foreign government pursuant to Title 18, United States Code, Section 951.

B.     WANG's Tasking by the MSS

15.     Messages between the defendants SHUJUN WANG, JIE JI and MING LI, also known as "Elder Tang" and "Little Li," reflected WANG's status as an MSS asset in the United States.[1]  In these messages, JI and LI tasked WANG with obtaining information on the activities of prominent Chinese dissidents and pro-democracy activists, both in the United States and in the PRC.

16.     On or about and between November 15, 2016 and November 17, 2016, in a series of messages between the defendants SHUJUN WANG and JIE JI, WANG informed JI about a book that was being written about Xi Jinping, the current President of the PRC and the General Secretary of the CCP.   JI thanked WANG for his efforts but stated that WANG's information was "too general" and directed him to follow up with details about the author's book and its content, its estimated completion and publication date, and the individuals and organizations that were assisting the author with funding.   WANG responded, "OK! I understand!"

17.     On or about November 16, 2016, the defendant MING LI, also known as "Elder Tang" and "Little Li," wrote the defendant SHUJUN WANG a message.   LI instructed WANG to book a plane ticket to the PRC that would be paid for by the defendant

---

[1] Unless otherwise indicated, all quoted communications described herein are verbatim translations of written Chinese or spoken Mandarin-Chinese.

FENG HE, also known as "Boss He."  LI indicated that HE wanted WANG to come to

Hong Kong soon after the Chinese Lunar New Year.  A search of WANG's travel records

reflects that WANG did, in fact, travel from New York to Hong Kong on or about February

2, 2017, less than a week after the Lunar New Year on January 28, 2017.

18.    In another series of messages on or about and between November 21,

2016 and November 22, 2016, the defendant SHUJUN WANG provided the defendant JIE JI

with the date, time, location and list of attendees for an upcoming Memorial Foundation

meeting.  JI indicated that the meeting was extremely important and directed WANG to

interface with a Chinese dissident attending the meeting (the "Dissident"), a person whose

identity is known to the Grand Jury, to "accomplish the task" assigned by the "Boss"—

referring to the defendant KEQING LU, also known as "Boss Lu."  JI noted that the

Dissident had contacts with "Tibetans, Uyghurs and Mongolians" and wished WANG good

luck at getting "good results" so that they could get more support from "Boss Lu," that is,

LU.  After WANG acknowledged JI's instructions, WANG reported that the Dissident had

arrived in Flushing, Queens from the PRC, confirmed his presence at the Memorial

Foundation meeting and agreed to meet with WANG in person to discuss, among other

matters, the Dissident's plan to make an "all-out effort" in 2017.  JI instructed WANG to

find out details about the Dissident's planned "all-out effort."  WANG agreed.

19.    In a message on or about November 28, 2016, the defendant SHUJUN

WANG forwarded defendant JIE JI an invitation addressed to "friends" in both the Tibetan

and Han Chinese communities in the United States, inviting them to attend a banquet

welcoming the Dalai Lama's newly appointed representative to the Chinese community in

North America.   WANG informed JI that various pro-democracy groups were hosting an event in the representative's honor and provided JI with the date, time and location of the event, along with the names and phone numbers of the main organizers.   In a series of messages on or about November 29, 2016, WANG provided JI with updated information about the event and its attendees, noting that there would be more than 40 attendees on the "Tibetan side" and around 60 to 70 individuals on the pro-democracy side.   JI responded that WANG would be more valuable to the MSS if he could obtain the plans and "inside discussions" relating to cooperation amongst pro-democracy groups.

20.   In a message on or about December 2, 2016, the defendant SHUJUN WANG informed the defendant JIE JI that a prominent dissident from Hong Kong was scheduled to arrive in Washington, D.C. on December 5, 2016 to attend Congressional hearings regarding the disappearance of five individuals in Hong Kong, which has been referred to as the "Hong Kong Causeway Bay [Books] Disappearances Incident," and later meet with WANG in New York City.

C.   WANG's Reporting to the MSS Using "Diaries"

21.   While operating under the direction and control of the defendants FENG HE, also known as "Boss He," JIE JI, MING LI, also known as "Elder Tang" and "Little Li," and KEQING LU, also known as "Boss Lu," the defendant SHUJUN WANG communicated the information he gathered through "diary" entries, which he sometimes referred to as "William's diary."   These "diaries" documented WANG's interactions with and assessments of well-known members of the pro-democracy movement in the United States and elsewhere.   While WANG sometimes sent messages containing "diary" entries to

his co-defendants and others via email, he also saved them in draft email form to allow others to access the account and read the "diary" entry without the message being sent. Internet protocol information for WANG's email account showed that his account was accessed on numerous occasions from IP addresses outside the United States at times when travel records reflected that WANG was in the United States.

22.     In a January 4, 2016 "diary" entry, the defendant SHUJUN WANG described a meeting with a prominent U.S.-based pro-democracy activist at a Democracy Party of China event, noting there were only "five people in the office."   WANG detailed their discussion about Taiwan-related events, the movement to end one-party CCP rule in the PRC and fundraising efforts.

23.     In a March 15, 2016 "diary" entry, the defendant SHUJUN WANG shared his "analysis" of possible protests and disruptions during Xi Jinping's upcoming visit to the United States.   WANG provided the name of the individual planning these demonstrations and shared another individual's assessment that the planners might not be as "aggressive as last year."

24.     In another March 2016 "diary" entry, the defendant WANG provided an assessment of the pro-democracy movement within the Chinese community in Flushing, Queens.   WANG noted that the number of activities had reduced "drastically" in recent years and provided a weekly schedule of two pro-democracy groups' activities.

25.     In a March 2019 "diary" entry, the defendant SHUJUN WANG listed possible speakers and attendees at a Tiananmen Square massacre memorial protest in New York.   According to WANG, a specified speaker was to deliver an "hour long" speech and

describe his feelings "without any reservations."   WANG further wrote that (a) he had not

heard from a well-known Taiwan democracy organization; (b) nothing dramatic occurred at a

50th birthday party in Flushing, New York, which 80 people attended; (c) a known anti-CCP

protestor would likely attempt to block Xi Jinping's car when Xi visited then-President

Trump at Mar-a-Lago in Florida; and (d) people in New York City were not enthusiastic

about "the democratic movement" because the Tiananmen Square protesters were too old

now.

     D.     <u>WANG's Reporting on an Activist Arrested by the PRC</u>

     26.     At least one democracy activist and dissident about whom WANG

reported to the MSS ("Hong Kong Dissident #1"), a person whose identity is known to the

Grand Jury, was subsequently arrested by PRC authorities.

     27.     Hong Kong Dissident #1, a well-known solicitor and politician, was the

former chairman of the Hong Kong Alliance in Support of Patriotic Democratic Movements

of China, the former chairman of the Democratic Party and a former member of the

Legislative Council of Hong Kong.

     28.     Messages between the defendant SHUJUN WANG and the defendant

MING LI, also known as "Elder Tang" and "Little Li," reflected WANG's tasking and

reporting on Hong Kong Dissident #1.   On or about November 16, 2016, WANG informed

LI that he had "just finished chatting" with Hong Kong Dissident #1 in a telephone

conversation, noting that he had asked "necessary questions" and received "candid" answers.

LI responded "great" and with a thumbs-up emoji, instructing WANG to write it in a "diary."

WANG added that he had arranged to meet Hong Kong Dissident #1 in person at a restaurant after the Chinese New Year.

29.     As directed by the defendant MING LI, also known as "Elder Tang" and "Little Li," on or about November 16, 2016, the defendant SHUJUN WANG drafted a "diary" entry containing a recitation of his telephone conversation with Hong Kong Dissident #1.  WANG detailed Hong Kong Dissident #1's statements and opinions, including regarding the activities of various pro-democracy organizations, Hong Kong independence and various candidates in upcoming elections in Hong Kong, as well as various socio-political topics.

30.     Some of the defendant SHUJUN WANG's notations in the "diary" entry included the following:

(a)     Hong Kong Dissident #1's home phone number with a note that WANG had called him twice on or about November 16, 2016 and, in the first call, a family member stated that Hong Kong Dissident #1 was not there;

(b)     Hong Kong Dissident #1's statement to WANG that, while he was no longer serving on the Legislative Counsel, his human rights law practice was very busy and he was active with the Hong Kong Alliance in Support of Patriotic Democratic Movements of China;

(c)     Hong Kong Dissident #1's statement that he did not support Hong Kong independence, but rather supported the "Basic Law and the One Country Two Systems" model of governance, in which there would be only one China under a communist

system run by CCP, but in which Hong Kong could retain its own economic and administrative systems;

(d)     Hong Kong Dissident #1's statement that it was difficult to predict whether Hong Kong's Chief Executive would be reelected, since the ultimate decision was with "Beijing" and President Xi Jinping, notwithstanding the Chief Executive's unpopularity;

(e)     With regards to the Pan-Democratic Alliance and their candidates running for office, Hong Kong Dissident #1's speculation about the number of votes needed and concession that "Beijing" would ultimately be the deciding factor; and

(f)     Hong Kong Dissident #1's discussions about plans to visit in Hong Kong and in New York City, including WANG's offer to host Hong Kong Dissident #1 for a meal.   According to WANG's phone records, WANG called Hong Kong Dissident #1 two times on or about November 16, 2016.

31.     On April 18, 2020, Hong Kong Dissident #1 was arrested for organizing a banned protest on October 1, 2019, China's National Day.   On May 28, 2021, Hong Kong Dissident #1 received two concurrent jail sentences of 18 months in prison for "inciting people to participate in an unlawful assembly" and for "organizing an unlawful assembly" in connection with the October 1, 2019 events.

IV.     WANG's False Statements About His Foreign Agent Activities

32.     On or about August 2, 2017, the defendant SHUJUN WANG voluntarily accepted an interview request from United States law enforcement and met with agents from the Federal Bureau of Investigation ("FBI"), including an interpreter, at a

restaurant in Flushing, Queens.   During the interview, WANG falsely denied having any

contact with individuals from the MSS or other PRC state security services.   WANG further

falsely claimed to have actively avoided contact with any PRC government officials, except

for when he needed to procure a visa to travel to the PRC.   WANG also claimed that he

could travel freely to the PRC because the Memorial Foundation did not espouse views

openly opposed to the CCP.

33.   On or about April 12, 2019, the defendant SHUJUN WANG was

referred for a secondary inspection by U.S. Customs and Border Protection ("CBP") upon his

arrival at John F. Kennedy International Airport after arriving on a flight from the PRC.

WANG falsely stated that he had "never" been approached by the MSS, had no contact with

MSS or PRC officials and had no PRC government contacts in his phone.   After receiving

warnings regarding false statements pursuant to Title 18, United States Code, Section 1001,

WANG again falsely denied that he presently had any PRC contacts on his person, in his

luggage or on his phone.   In fact, WANG had had repeated contact with MSS and PRC

officials and was in possession of MSS and PRC contacts in his address book at the time of

the interview.

34.   In a border search of the defendant SHUJUN WANG's luggage and

person, CBP officers located a hand-written document with the names and telephonic contact

information of approximately 64 pro-democracy activists, many of whom were in the United

States, as well as information regarding Hong Kong Dissident #1.   CBP officers also found a

handwritten note stating:

> Go to the big temple on the sea shore in the morning, go to
> Weihai Road after breakfast, buy Chinese traditional clothes, the

Cultural Street, shopping, meeting Director He in the afternoon
at 2:00, visit the Zhongshan Park, the Lu Xun Park,
authentication.

"Weihai Road," "Zhongshan Park" and "Lu Xun Park" were locations in Qingdao, China.

The description in the note corresponded to the entry for "He Feng, Guangzhou, Director"

found in WANG's black address book, described below, which related to the defendant

FENG HE.

35.      CBP officers also found in the defendant SHUJUN WANG's

possession a black address book containing numerous handwritten entries with contact

information for PRC government officials, including the defendants FENG HE, also known

as "Boss He," JIE JI, MING LI, also known as "Elder Tang," and "Little Li," and KEQING

LU, also known as "Boss Lu."

V.      WANG's Statements to an Undercover Law Enforcement Agent

36.      On or about July 31, 2021, an undercover United States law

enforcement agent (the "UC") met with the defendant SHUJUN WANG.   The meeting was

recorded.   The UC knocked on the door of WANG's residence in Norwich, Connecticut,

stated that he was from the PRC and was sent by the "Boss" to deliver a message to WANG.

WANG asked, "Which Boss?"   The UC named the defendant FENG HE, also known as

"Boss He."   WANG then invited the UC into his home.

37.      The defendant SHUJUN WANG asked if the UC personally knew the

defendant FENG HE, also known as "Boss He."   The UC explained that he was sent by "the

headquarters," but that he had met with HE once in person.   The UC stated that he also

knew the defendant JIE JI quite well.   WANG confirmed he knew both JI and HE as MSS

officers, but claimed that he no longer had frequent contact with them since the COVID-19 pandemic began.

38.     The UC told the defendant SHUJUN WANG that the defendant FENG HE, also known as "Boss He," had asked the UC to pass a message to WANG.   The UC explained that the MSS had received information that WANG was under investigation by the FBI and that WANG's electronic communications may have been monitored.   After WANG asked the UC for assistance, the UC said that he could help WANG get rid of "diaries" and other incriminating messages in certain email accounts.   WANG described to the UC how, beginning in 2005, he would write "diaries" as a way to "communicate with friends"—the MSS handling officers.   WANG stated that he typically wrote two or three "diary" entries per month.   WANG claimed that much of the information he conveyed about Chinese pro-democracy movements and activists was public, such as meeting minutes.

39.     The defendant SHUJUN WANG asked the UC to help him "delete" the "diaries."   The UC responded that it was not feasible to delete all of them since that would appear suspicious.   WANG told the UC that he used certain email accounts to communicate with defendant HE FENG, also known as "Boss He," and MING LI, also known as "Elder Tang" and "Little Li."   WANG provided the UC with passwords for his email accounts so that the UC could delete the "diaries" and other incriminating messages.   Specifically, WANG instructed the UC to log into the accounts and delete every other "diary" entry. WANG also told the UC that his electronic devices could be retrieved by the UC from WANG's apartment in Flushing, Queens, indicating that the UC should corrupt any incriminating files on WANG's electronic devices.

40.     The defendant SHUJUN WANG and the UC also discussed Hong Kong Dissident #1.   WANG claimed that he was very close to Hong Kong Dissident #1 and recounted how the defendant FENG HE, also known as "Boss He," directed WANG to treat Hong Kong Dissident #1 to a meal to ascertain Hong Kong Dissident #1's thoughts and opinions on the Hong Kong elections.   WANG stated that he spent more than $4,000 to have a meal with Hong Kong Dissident #1 and his family, and that WANG wrote up the substance of their conversations, but did not save it on his computer.

41.     The defendant SHUJUN WANG stated that, if questioned by U.S. law enforcement, he would offer the excuse that the information he provided was not classified. However, as set forth herein, WANG provided the MSS with nonpublic information regarding the subjects of their surveillance, including U.S. persons, such as nonpublic statements, plans to travel and private views on matters of unique sensitivity to the PRC government.

VI.     WANG's Admissions to Law Enforcement

42.     On or about August 11, 2021, United States law enforcement agents approached the defendant SHUJUN WANG at his residence in Connecticut, identified themselves as FBI agents and requested that WANG speak with them.   WANG agreed. The interview was recorded.

43.     Initially, the defendant SHUJUN WANG denied and misrepresented much of the interaction he had with the UC.   WANG initially claimed that the UC was a foreign exchange student, and then later claimed that the UC came to WANG's home to install an air conditioner.   After further questioning, while denying that he worked for the

MSS as a foreign agent, WANG confirmed his relationship with the MSS. WANG admitted that (a) the defendant JIE JI worked with the MSS in Qingdao and that WANG provided JI with information about various pro-democracy events, venues and attendees, while also identifying a photograph of JI in an MSS uniform; (b) the defendant FENG HE, also known as "Boss He," worked with the MSS in Guangdong, and that WANG met with HE in person on at least three occasions; (c) the defendant MING LI, also known as "Elder Tang" and "Little Li," was a subordinate of HE and that LI occasionally retrieved WANG from the airport when he traveled to the PRC; and (d) WANG provided the MSS with information about Hong Kong Dissident #1, admitting that the information he provided to the MSS was "not public" but that he did not consider it "secret," that is, classified.

VII.   The Search of WANG's Residences

44.     On or about March 16, 2022, law enforcement agents executed court-authorized warrants to search WANG's residences in Flushing, Queens and Norwich, Connecticut. Pursuant to those searches, law enforcement recovered:

(a)     hand-written notes containing contact emails, addresses, phone numbers and other contact information for defendants FENG HE, also known as "Boss He," JIE JI, MING LI, also known as "Elder Tang" and "Little Li," and KEQING LU, also known as "Boss Lu," as well as contact information for other PRC officials, including some assigned to the PRC Consulate in New York City;

(b)     email addresses and passwords for email accounts WANG shared with JI and LI for the purpose of sharing WANG's "diaries";

(c)    contact information for a variety of well-known Chinese dissidents, human rights leaders and pro-democracy activists, including Hong Kong Dissident #1;

(d)    electronic messages between WANG, JI, and LI from in or about 2021; and

(d)    approximately 163 "diary" entries, dated from in or about and between 201x and 2014.

COUNT ONE
(Conspiracy to Act as Agents of a Foreign Government<br>Without Prior Notification to the Attorney General)

45.    The allegations contained in paragraphs one through 44 are realleged and incorporated as if fully set forth in this paragraph.

46.    In or about and between January 2011 and August 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SHUJUN WANG, FENG HE, also known as "Boss He," JIE JI, MING LI, also known as "Elder Tang" and "Little Li," and KEQING LU, also known as "Boss Lu," together with others, did knowingly and willfully conspire to act in the United States as agents of a foreign government, to wit: the PRC government, without prior notification to the Attorney General of the United States, as required by law, contrary to Title 18, United States Code, Section 951(a).

47.    In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants SHUJUN WANG, FENG HE, also known as "Boss He," JIE JI, MING LI, also known as "Elder Tang" and "Little Li," and

KEQING LU, also known as "Boss Lu," together with others, did commit and cause the commission of, among others, the following:

## OVERT ACTS

(a)     In or about and between January 2016 and March 2016, WANG drafted several email "diaries" detailing for JI and LU his interactions with and assessments of well-known members of the pro-democracy movement in the United States and elsewhere.

(b)     On or about and between November 15, 2016 and December 2, 2016, WANG and JI communicated through a messaging application regarding LU's directives and the activities of various Chinese dissidents and pro-democracy activists.

(c)     On or about November 16, 2016, WANG and LI communicated through a messaging application regarding WANG's interactions with Hong Kong Dissident #1.

(d)     On or about November 16, 2016, WANG drafted a "diary" entry for HE and LI regarding his conversations and impressions of Hong Kong Dissident #1.

(e)     On or about November 16, 2016, WANG placed two phone calls to Hong Kong Dissident #1.

(f)     In or about 2018, WANG travelled to Qingdao, PRC and met with HE and LI.

(g)     On or about April 12, 2019, WANG possessed the names and telephonic contact information of approximately 64 pro-democracy activists.

(h)     On or about April 12, 2019, WANG possessed a black address book containing contact information for known PRC government officials, including HE, JI, LI and LU.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT TWO
(Acting as an Agent of a Foreign Government
Without Prior Notification to the Attorney General)

48.     The allegations contained in paragraphs one through 44 are realleged and incorporated as if fully set forth in this paragraph.

49.     In or about and between January 2011 and August 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant SHUJUN WANG did knowingly act in the United States as an agent of a foreign government, to wit: the PRC government, without prior notification to the Attorney General of the United States, as required by law.

(Title 18, United States Code, Sections 951(a) and 3551 et seq.)

## COUNT THREE
(Criminal Use of Identification)

50.     The allegations contained in paragraphs one through 44 are realleged and incorporated as if fully set forth in this paragraph.

51.     In or about and between January 2016 and August 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant SHUJUN WANG, together with others, did knowingly and intentionally transfer and possess, without lawful authority and in and affecting interstate and foreign commerce, one or more means of identification of another person, to wit: telephone numbers and other

contact information belonging to one or more pro-democracy activists and Chinese

dissidents, individuals whose identities are known to the Grand Jury, with the intent to

commit, and aid and abet, and in connection with, unlawful activity that constituted one or

more violations of federal law, to wit: the crimes charged in Counts One and Two.

                 (Title 18, United States Code, Sections 1028(a)(7), 1028(b)(2)(B),

1028(c)(3)(A), 2 and 3551 et seq.)

## COUNT FOUR
### (False Statements)

     52.    The allegations contained in paragraphs one through 44 are realleged

and incorporated as if fully set forth in this paragraph.

     53.    On or about April 12, 2019, within the Eastern District of New York,

the defendant SHUJUN WANG did knowingly and willfully make one or more materially

false, fictitious and fraudulent statements and representations, in a matter within the

jurisdiction of the executive branch of the Government of the United States, to wit: the

following false statements during a secondary inspection at John F. Kennedy International

Airport to CBP personnel:

         (a)    WANG falsely represented that he never had any contact with

the MSS or other PRC officials when, in fact as he well knew and believed, WANG had

extensive contacts with MSS and other PRC officials; and

         (b)    WANG falsely represented that he had no contact information

for PRC or MSS officials in his possession when, in fact as he well knew and believed,

WANG was in possession of an address book that had the names and contact information for numerous PRC and MSS officials.

(Title 18, United States Code, Sections 1001(a)(2) and 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNT THREE

54.     The United States hereby gives notice to the defendant SHUJUN WANG that, upon his conviction of the offense charged in Count Three, the government will seek forfeiture in accordance with: (a) Title 18, United States Code, Section 982(a)(2)(B), which requires any person convicted of such offense to forfeit any property constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense; and (b) Title 18, United States Code, Section 1028(b)(5), which requires any person convicted of such offense to forfeit any personal property used or intended to be used to commit the offense.

55.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any

other property of the defendant up to the value of the forfeitable property described in this

forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(2)(B), 982(b)(1) and 1028(b)(5); Title 21, United States Code, Section 853(p))

A TRUE BILL

_Stella Alcide_

FOREPERSON

BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. #2019R00929
FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

## EASTERN *District of* NEW YORK

## CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

SHUJUN WANG, FENG HE, also known as "Boss He," JIE JI, MING LI, also known as "Elder Tang" and "Little Li," and KEQING LU, also known as "Boss Lu,"

Defendants.

# INDICTMENT

(T. 18, U.S.C., §§ 371, 951(a), 982(a)(2)(B), 982(b)(1), 1001(a)(2), 1028(a)(7), 1028(b)(2)(B), 1028(c)(3)(A), 1028(b)(5), and 3551 et seq.; T. 21, U.S.C., § 853(p))

*A true bill.*

_____ Stella Alcide _____
                                                              *Foreperson*

*Filed in open court this* _____ *day.*

*of* _____ *A.D. 20* _____

_____
                                                                      *Clerk*

*Bail. S* _____

*Artie McConnell, Assistant U.S. Attorney (718) 254-7000*